UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
In re:                                              :     Chapter 11
                                                    :
56 WALKER LLC,                                      :     Case No. 13-11571 (ALG)
                                                    :
                                                    :
                    Debtor.                         :
-------------------------------------------------------------x

### DECISION REGARDING PROPOSED ORDER AUTHORIZING DISTRIBUTIONS

Before the Court is a proposed Order Authorizing Distributions under the Debtor's Third Amended Liquidating Plan ("Proposed Order") filed by MB Financial Bank, N.A. ("MB") [ECF No. 128]. The Debtor and Dickerson & Tomaselli, an unsecured creditor owed legal fees, filed objections (collectively, the "Objections") [ECF Nos. 131 and 134]. For the reasons set forth below, the Court overrules the Objections in large part but directs MB to respond to one of them.

### Background

The relevant facts are more fully set forth in the Court's Memorandum of Decision entered on March 25, 2014 [ECF No. 118], *In re 56 Walker LLC*, 13-11571 (ALG), 2014 WL 1228835 (Bankr. S.D.N.Y. Mar. 25, 2014).

This is a single asset real estate case and the Debtor's second filing.[1] As it had in the first case, the Debtor filed an objection to the claim of MB; it also objected to the claim of Joseph Pell Lombardi & Associates, Architects ("Lombardi"). Several unsecured creditors also filed objections to MB's claim.

Notwithstanding its objections to two of the main claims in this case, the Debtor also proceeded to sell its property under a plan. On January 29, 2014, the Debtor confirmed a consensual plan of reorganization premised on the sale of its property located at 56 Walker

---

[1] The first case ended in the appointment of a trustee and dismissal. *See* Case No. 11-14480, ECF Nos. 109 and 164.

Street, New York, NY 10013 (the "Property"). The Property ultimately sold for $18 million, and the approximately $16.8 million in sale proceeds, after closing costs and a broker's commission, is currently being held in Debtor's counsel's escrow account.

The Court thereafter entered a Memorandum of Decision on March 25, 2014 that overruled the objections to MB's secured claim, based on the preclusive effect of a State court judgment of foreclosure that had overruled substantially the same objections that the Debtor raised here. The Decision, however, left open the priority and amount of the MB claim. Based on the record, the Court declined to find that the State court proceeding had finally determined Lombardi's claim and thus set down Lombardi's claim for further proceedings.[2] The Decision concluded by directing MB to settle an order to provide for a distribution of the sale proceeds in accordance therewith.

The Proposed Order, which has been agreed to by MB, Lombardi and a third lien creditor, VCD Construction, Inc. ("VCD"), provides that (i) MB shall have an allowed Class 1 Secured Claim and distribution in the amount of $15.1 million; (ii) Wextrust/HPC Mortgage Fund, LP shall have an Allowed Class 2 Secured Claim and distribution in the amount of $150,000 (a reduced amount previously agreed to by all parties and incorporated in the Court's March 10, 2014 order [ECF No. 115]); (iii) Lombardi shall have an Allowed Class 3 Secured Claim and distribution in the amount of $400,000; (iv) VCD shall have an Allowed Class 3 Secured Claim and distribution in the amount of $350,000; (v) Debtor's counsel shall have an Allowed Administrative Claim for fees and expenses capped at $250,000; and (vi) the remaining funds (approximately $550,000 based on sale proceeds of $16.8 million) will be distributed to holders of Allowed Unsecured Class 4 Claims. Equity will not receive any recovery.

---

[2] Lombardi moved for reconsideration of the order on April 8, 2014 [ECF No. 124]. The motion is pending and will be moot if the Proposed Order is entered.

The Debtor filed a two-part objection to the Proposed Order. The Debtor's first objection detailed an ongoing dispute with the purchaser of the property over costs related to water damage that occurred prior to closing. In order to close the sale, the Debtor agreed to hold in escrow $1.7 million of the purchase price pending resolution of the water damage issue. As a result of the escrow agreement between the Debtor and the purchaser, only $15.1 million is currently available to be distributed from the sale proceeds, making it possible to distribute funds only to MB under the order proposed by MB and, the Debtor argues, rendering the Proposed Order premature. As a separate matter, the Debtor had the following further objections to the Proposed Order: (i) capping counsel's fees at $250,000 is unreasonable because counsel had already incurred fees of approximately $250,000, and still had to resolve the water damage issue with the purchaser and an insurer; (ii) fixing the amount of Lombardi's claim was premature because the Debtor has a pending unresolved objection to the claim; and (iii) making any payment to MB was improper because the Debtor asserts that it has uncovered additional information that MB acted wrongfully.

## Discussion

### MB's Claim

The Debtor's confirmed Third Amended Liquidated Chapter 11 Plan (the "Plan") provides for a "waterfall" distribution to creditors from the sale of the Property. Section 3.2 of the Plan provides that MB's allowed secured claim will be paid first in full with interest, attorney's fees and costs from the petition date, unless the total distribution amount is less than MB's allowed secured claim as of the petition date, in which case interest, attorney's fees and costs will be treated as a class 4 unsecured claim.[3] MB's claim as of the petition date was

---

[3] Section 3.2, Class 1, provides:

$15,119,164.62, which is less than the approximately $16.8 million in sale proceeds (ignoring the water damage escrow), thereby entitling MB to post-petition interest, attorney's fees and costs. The Proposed Order provides MB with a $15.1 million allowed secured claim, eliminating all amounts for interest, attorney's fees and other costs that were potentially available to it under the Plan. The Proposed Order thus includes a voluntary reduction in claim amount on the part of MB, with less favorable treatment than under the Plan, notwithstanding the fact that as the holder of the first lien on the Property, it would be *prima facie* entitled to post-petition interest, attorney's fees and costs that would consume the entirety of the sale proceeds.

Aside from the water damage escrow, which is dealt with below, the only objections that the Debtor and Dickerson and Tomaselli raise to MB's claim (as reduced) are the same general claims of wrongdoing that were the subject of this Court's Decision entered on March 25, 2014. The Court held there that these claims were precluded by the judgment of foreclosure entered by the State court. It further held that the Debtor could pursue an appeal of that judgment, but that the appeal should not hold up distribution of the sale proceeds under the Plan. The current Objection refers to "newly discovered evidence" of wrongdoing but contains nothing specific. In any event, the matter is for the State courts. If the Debtor manages to reverse the finding made by the foreclosure court, it can seek appropriate relief.

---

The Allowed Secured Claim of MB Financial, if any, shall be paid in full in cash, to the extent Allowed, from the Distribution Fund on the Effective Date. The Allowed Class 1 Secured Claim, if any, shall accrue interest and reasonable attorneys' fees and costs from the Petition Date through the date of final payment of the Allowed Class 1 Secured Claim under the Plan at the applicable rate of interest pursuant to its loan documents with the Debtor to the extent that the Distribution Fund is in excess of the Allowed Class 1 Secured Claim (as of the Petition Date). In the event that the Allowed Class 1 Secured Claim (as of the Petition Date) is greater than the Distribution Fund, MB Financial shall not be entitled to post-Petition Date interest and any claim of MB Financial for post-Petition Date legal fees, to the extent allowed, shall be treated as a Class 4 Unsecured Claim. Should the Class 1 Secured Claim not be Allowed as of the Effective Date, the Disbursing Agent shall hold the Distribution Fund in escrow pending the Allowance of the Class 1 Claim by a Final Order. The Allowed Class 1Claim is impaired under this Plan and shall be entitled to vote to accept or reject the Plan.

**Lombardi's Claim**

The Debtor has also objected to the Proposed Order's distribution to Lombardi on account of its Class 3 Secured Claim. The Debtor points out that it has a pending objection to Lombardi's claim and that the Court held that the State court's grant of judgment to Lombardi was not preclusive. However, under present circumstances, the Lombardi claim is being paid (in part) only as a consequence of MB's willingness to give up part of its distribution to the two Secured Creditors in Class 3, Lombardi and VCD. If these other Secured Creditors were not paid, MB could retain the proceeds for itself.

The courts have placed appropriate constraints on the "gifting" doctrine, emphasizing that a distribution scheme that violates the absolute priority rule cannot be justified on the ground that a secured creditor entitled to a distribution has merely agreed to "gift" part of its distribution to a junior class over the objection of an intermediate class. *See In re Iridium Operating LLC*, 478 F.3d 452, 465–66 (2d Cir. 2007). In this case, however, the Debtor's confirmed plan complies with the absolute priority rule, providing a distribution in strict conformity with the rights of the secured creditors to all of the proceeds of their collateral until paid in full, with any surplus to be paid to the unsecured creditors and then to equity. Assuming that MB is entitled to all of the proceeds of the Property sale, there is no principle of bankruptcy law that precludes it from agreeing to waive interest or fees or even principal to allow a distribution to other creditors, which distribution is itself in strict conformity with the absolute priority rule. *See, e.g., In re McCoy*, 496 B.R. 678, 686 (Bankr. E.D.N.Y. 2011) (approving settlement agreement fixing the first lien creditor's claim amount after the creditor waived its late fees and interest and limited its attorney's fees). Even if the Debtor were successful in its objection to Lombardi's claim, it would make no difference to the ultimate distribution of the sale proceeds because Lombardi's

5

claim (Class 3) is paid after the claims of MB (Class 1) and Wextrust (Class 2),[4] and MB's secured claim—without its voluntary reduction made solely for purposes of the Proposed Order—is greater than the available sale proceeds.[5]

**The Effect of the Water Damage Escrow**

The Debtor has, however, raised one new issue that cannot be determined at present—the escrow of $1.7 million of the purchase price to protect the purchaser from the possible costs of water damage. It is not clear whether MB was aware of this escrow when it proposed the instant distribution. Nor is it clear whether there have been recent developments reducing the scope of the issue, either by way of an agreement with the purchaser or the availability of insurance. Nor do the present papers make clear who would shoulder the cost or risks if the proceeds turn out to be less than $16.8 million. The Court cannot approve a distribution until it receives clarification of these issues.

**The Cap on Counsel Fees**

Finally, the Debtor objects to the Proposed Order's $250,000 cap on its counsel fees. Section 3.1(b) of the Plan provides that the allowed administrative claims of Debtor's attorneys will be paid in full absent an agreement with MB.[6] At the June 6, 2014 hearing, Debtor's counsel

---

[4] Section 3.4 Class 3 provides that "The Allowed Secured Claims of holders of liens, other than those set forth in Classes 1 and 2, against the Property shall be paid in full . . . to the extent that funds are available for payment thereof after satisfaction of the Allowed Class 1 and Class 2 Secured Claims."

[5] If the issue were the reasonableness of the settlement between MB and Lombardi, there would be much to commend the amount agreed to. First, the Lombardi distribution is supported by Lombardi's concessions. Lombardi filed a proof of claim for $506,538.65 as a secured claim and $1,718,125 as an unsecured claim. In its agreement with MB, Lombardi has agreed to reduce its secured claim and waive its unsecured claim altogether. Second, the settlement ends litigation not only with regard to the claim amount but whether a State court order relative to the claim is preclusive. Third, the settlement is supported by the fact that there is some indication in the record that the priority of MB, Lombardi and VCD may be disputed among themselves; the settlement takes any such issue out of the case.

[6] Section 3.1(b) Allowed Claims of Professionals:
  The Debtor has two Professionals whose employment has been approved by the Bankruptcy Court; (i) the Debtor's current bankruptcy counsel, DelBello Donnellan Weingarten Wise & Wiederkehr, LLP

indicated that they would be open to a $250,000 cap on their fees as long as they could collect additional fees for working on the issues related to the water damage. This appears to be entirely appropriate; as for future fees, MB should decide whether it wishes the services of Debtor's counsel, and provide for their payment if it does. As for counsel fees to date, Debtor's counsel has already filed a final fee application in the amount of $258,972.50 in fees and $5,924.68 in expenses; the amounts exceeding $250,000 are not material.[7] In any event, Debtor's counsel received an interim award of $100,000 in which it waived any right to attempt to surcharge MB's collateral under § 506(c) of the Bankruptcy Code. *See Order Authorizing Payment of a Portion of the Debtor's Legal Fees from the Collateral of MB Bank* dated April 9, 2014 [ECF No. 125]. The Court is aware of no other basis on which the Debtor could require payment of its legal fees from MB's distribution, rather than from the distribution to the unsecured creditors.

The Court thus will overrule the Objections to the Proposed Order in large part. The Court recognizes that the effect of the water damage issue must be clarified before there can be a distribution from the sale proceeds, but the Proposed Order's distribution otherwise provides an appropriate and timely resolution of the outstanding issues relating to the priority and amount of the secured creditors' claims, while also providing a potential recovery to unsecured creditors. Without the Proposed Order, the parties would likely continue to spend estate funds litigating these issues, which would significantly reduce the available funds for distribution.

---

("DDWWW") and (ii) Sothebys International Realty Inc., the Debtor's retained real estate Broker ("Broker"). The Allowed Administrative Claims of DDWWW shall be paid in full, in cash, upon the later of (i) allowance by the Court pursuant to 11 U.S.C. § 330 and, absent an agreement with the Class 1 Secured Creditor, 11 U.S.C. §506(c) or (ii) the Effective Date. The Allowed Administrative Claim of the Broker shall be paid in full, in cash, on the Effective Date in accordance with the engagement agreement previously approved by the Bankruptcy Court.

[7] Debtor's counsel apparently are also holding a retainer of $14,945.

## **Conclusion**

If MB is willing to take the risks associated with the water damage escrow, it may submit an order providing for the following: MB shall have an allowed Class 1 Secured Claim and distribution in the amount of $15.1 million, less any amount paid to the seller from the funds escrowed in connection with the water damage issue; Wextrust shall have a $150,000 Allowed Class 2 Secured Claim and distribution; Lombardi shall have an Allowed Class 3 Secured Claim and distribution in the amount of $400,000; VCD shall have an Allowed Class 3 Secured Claim and distribution in the amount of $350,000; Allowed Unsecured Class 4 Claims shall be entitled to share the remaining funds (up to $550,000); and Debtor's counsel shall have a claim of up to $250,000 payable out of the sale proceeds, with the right to seek to charge the unsecured creditors' recovery for any additional fees incurred. In the event MB is not willing to take the risks relating to the waste damage issue, it shall propose a suitable distribution in an order settled on five days' notice to all creditors.

Dated:   New York, New York
         June 27, 2014

                                             */s/ Allan L. Gropper*
                                        UNITED STATES BANKRUPTCY JUDGE